ROGERS, Justice.
 

 The plaintiffs in this suit filed a rule charging that W. Scott Heywood, formerly a state senator residing in the City of Jennings, was guilty of contempt of this Court. Plaintiffs in rule asserted that pending action upon the application for a rehearing of the decision of this Court holding that the reorganization amendment was unconstitutional, the respondent had issued a statement prejudicial to them and embarrassing to the Court, which statement was published in the Times-Picayune and in the Item, newspapers published in New Orleans
 
 *186
 
 and having a large circulation in that City and in the State of Louisiana. Copies of the newspapers are attached to the rule.
 

 The statement of Senator Heywood, as published in the Item of July 3, 1941, and in the Times-Picayune of July 4, 1941, reads as follows:
 

 “Mr. Heywood said ‘there is no question of doubt in my mind that this whole litigation against the consolidated constitutional amendments is nothing but a political fight and I feel that the people of Louisiana should resent it.
 

 “ ‘If I were the governor, it is my belief that I would call a special session of the legislature and bring about a constitutional convention to overcome this unquestionably technical decision of a majority of the supreme court, which is equivalent to telling the voters of this state that they can not have what they desire.’ ”
 

 The publication in the Item of July 4, 1941, was not in the same words as the previous publication in that newspaper and in the Times-Picayune, but it was of similar import.
 

 On October 10, 1941, the return day fixed by the Court in its order citing Senator Heywood for contempt, he appeared through counsel and filed a written return to the rule. Respondent admitted the publications in the New Orleans Item and in the Times-Picayune as set forth in the rule for contempt, but he denied that, even as published, his statement contained any element of contempt as charged in the rule.
 

 Respondent averted that he did not make any statement whatever to any newspaper or to any of their reporters or representatives, but that at the request of a friend he dictated to a stenographer the following statement which, in case of publication, should be printed in full and not by extracts :
 

 “As everyone in my section of the country knows, I campaigned for Earl K. Long against Sam Jones. But the voice of the people was expressed in that campaign and Sam Jones became our Governor, and I believe that every good citizen of this State should back our Governor in his program.
 

 “When I was in the Tax Reform Commission in 1932 and 1933 and up to the regular session of 1934, I recommended to the Commission practically the same program that Governor Jones has inaugurated, to-wit: the consolidation of the superfluous and unimportant bureaus, for the purpose of a retrenchment program to save the tax payers’ money. The majority of the Tax Reform Commission did not follow all of my recommendations, but only accepted the recommendation of consolidating the Levee Boards, much to my disappointment.
 

 “There is no question of doubt in my mind that this whole litigation against the consolidated Constitutional Amendments is nothing but a political fight, and I feel that the people of the State of Louisiana should resent it. We are in no position at this time, particularly, to have this State exploited and embroiled in a political fight, which will unquestionably hurt the State and the taxpayers of the State.
 

 “If I were the Governor, it is my belief that I would call a special session of the Legislature and bring about a Constitu
 
 *188
 
 tional Convention to overcome this unquestionably technical decision of the majority of the Supreme Court, which is equivalent to telling the voters of this State of Louisiana that they cannot have what they desire.
 

 “In other words, simply on a technical point of two constitutional amendments having been embodied in one, with the people voting for both, what the majority of the Supreme Court has stood on is nothing but a technicality.”
 

 Respondent averred that nothing contained in the unauthorized publication of extracts from his statement, “either in word or intendment, may be justly construed as evidence of a despising of the authority, justice or dignity of this Honorable Court, or as obstructive of the administration of justice, or as questioning the correctness of the decision rendered by this court” on the validity vel non of the reorganization amendment. Respondent followed this general averment with certain specific averments setting forth his position in the matter. In substance respondent alleged that, in common with many others, he, in good faith, believed thaf the litigation involving the reorganization amendment had a political background which he felt should be resented, particularly as at that time the people of the State were not in a position to become embroiled in a political fight “to the unquestionable hurt of the State and the taxpayers”; that this was not a reflection on the Court and could not have intimidated or embarrassed its members in rendering a proper decision in the case. That some time prior to this Court’s decision, respondent had read the decision of the Judge of the District Court and was convinced that it was based upon a too rigid interpretation of the Constitution and that, as a layman, he believed that while the decision of the District Judge might be sound upon technical points, it should not have gone so far as to override the adoption of the proposed amendment by the electorate. That when the judgment of the lower court was affirmed by this Court, respondent was still of the impression that while the decision was legally correct, it was based upon a technicality which was due to the law and not to the judges whose duty it was to interpret and apply the law. That his statement was issued before the rendition of this Court’s ruling on the application for a rehearing, “in which the Court stressed that the defects pointed out were fundamental and not merely technical, and before respondent had had the benefit of this Court’s views upon that question, and that it was for these reasons that the decision was referred to as technical; that the use of the word ‘technical’ was in no sense intended to be, nor in fact was, offensive ; * * * that, as appears upon the face of the publication itself, respondent did not question the correctness of this Court’s decision, whether proceeding from technical or fundamental reasons, or from a unanimous or a divided court, — much as1 he deplored the result, which had the effect of depriving the voters of this State of what they had expressed at the election as their desire to have; that his statement was given without any thought that a rehearing might be applied for; that upon the face of the publication itself it appears
 
 *190
 
 that your respondent did not question the correctness of this Court’s judgment, because even before its finality he suggested the holding of a Constitutional Convention to remedy the defects which had been found by the Court.” That as a member of the State Senate and of the Tax Reform Commission in 1932 and 1933 and up to the Regular Session of 1934, he was wedded to the program of consolidation of superfluous and unimportant bureaus in order to save the taxpayers money, and that his comments were due to his disappointment that the people of the State should be deprived of this reform.
 

 Finally, respondent reiterated the absence of any intendment on his part to obstruct the administration of justice, to do or say anything derogatory to the authority or dignity of this Court, or to flatter himself with the thought that anything he might say would influence or intimidate the Court; but that if the Court, notwithstanding, should construe anything he had done or said as constituting contempt, he expressed his regret that the Court should have placed such an interpretation upon his comments which he, in good faith, believed he had the right to make.
 

 We find nothing in respondent’s statement that can be considered as a contempt of court. There is no threat to the members of the court,- veiled or otherwise, contained in respondent’s suggestion that the Governor should call a special session of the Legislature and bring about a constitutional convention merely for the purpose of overcoming the effect of what respondent, a layman, considered to be a decision of this Court based wholly upon a technicality. The belief entertained and expressed by respondent that the decision, though it might be legally sound, was based on nothing but a technicality and should not be allowed to prevail to defeat the people’s will was not such a criticism as would constitute contempt of this Court. As a matter of fact that identical conception of the law was seriously urged and relied on by the relators as a defense to the taxpayers’ suit attacking the constitutionality of the reorganization amendment. The opinion expressed by respondent that the decision of this Court was based upon a too rigid interpretation of the Constitution did not and can not bring him within the now prevailing rule of “clear and present danger of substantive evils,” or even within the former prevailing rule of “reasonable tendency to interfere with the orderly administration of justice.”
 

 We are pleased to note respondent’s unreserved disavowal of any intention on his part to do or say anything derogatory to the authority or dignity of this Court.
 

 For the reasons assigned, the rule for contempt herein issued against W. Scott Heywood is discharged.